FILED
CLERK, U.S. DISTRICT COURT
08/25/16
CENTRAL DISTRICT OF CALIFORNIA
BY: GR DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ANTHONY LANDAVERDE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 15-07886-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.  INTRODUCTION

Plaintiff Mark Anthony Landaverde ("Plaintiff") challenges the Commissioner's denial of his applications for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

## II.  PROCEEDINGS BELOW

On March 8, 2012, Plaintiff applied for DIB and SSI alleging disability beginning March 18, 2010. (Administrative Record ("AR") 23). His applications were denied initially on June 21, 2012, and upon reconsideration on February 15,

2013. (AR 68-103.) On March 27, 2013, Plaintiff filed a written request for hearing, and a hearing was held on February 6, 2014. (AR 40-67, 122-23.) Represented by counsel, Plaintiff appeared and testified. (AR 48-64.) At the conclusion of the hearing, the Administrative Law Judge ("ALJ") determined that he needed to obtain evidence from a medical expert. (AR 65.) Accordingly, on February 21, 2014, the ALJ provided evidence for review and propounded interrogatories to an impartial medical expert, Eric Puestow, M.D.[1] (AR 1344-54.) Dr. Puestow provided a response to the interrogatories on March 3, 2014. (AR 1355-63.) On March 6, 2014, the ALJ notified Plaintiff's counsel that Dr. Puestow's response was available in the file for his review, and offered him the opportunity to comment on the response, submit more evidence, request the submission of cross interrogatories to Dr. Puestow, or request a supplemental hearing. (AR 256.) Plaintiff's attorney did not submit a response to the offer of additional relief. (AR 23.) The ALJ also propounded interrogatories to an impartial vocational expert ("VE"), Carmen Roman, to which Ms. Roman responded. (AR 269-86.) Again, Plaintiff's counsel was offered an opportunity to respond, but no response was received. (AR 23, 259-67, 287-88.) On April 25, 2014, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from March 18, 2010 through the decision date. (AR 33.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) Plaintiff filed this action on October 7, 2015. (Dkt. No. 1.)

---

[1] The ALJ initially propounded interrogatories to a medical expert, Vern Laing, M.D., who did not provide a response to the interrogatories. (AR 160-61, 1333-42.) The interrogatories previously propounded to Dr. Liang were subsequently propounded to Dr. Puestow. (AR 160.)

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 18, 2010, the alleged onset date ("AOD"). (AR 26.) At **step two**, the ALJ found that in combination, Plaintiff has the severe impairments of Wegener's granulomatosis,[3] obesity, and mixed headache disorder. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform sedentary work . . . except[ ] he can lift and carry up to ten pounds occasionally and five pounds frequently; he can stand and walk for two to four hours, in combination, and sit, up to eight hours, cumulatively in an eight-hour workday; he can occasionally climb, bend, kneel, reach above shoulder level, and crawl; and he may occasionally perform work around extreme heat, cold, dense fumes, dust, smoke, and around dangerous moving machinery.

(AR 27.)

At **step four**, based on Plaintiff's RFC and the VE's opinion, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 31.) At **step five**, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 32.) Accordingly, the ALJ found that

///

---

[3] Wegener's granulomatosis is a rare autoimmune disorder in which blood vessels become inflamed and restrict blood flow to various organs. *See* Mayo Clinic website, http://www.mayoclinic.org/diseases-conditions/granulomatosis-with-polyangiitis/home/ovc-20167226 (last visited Aug. 24, 2016).

Plaintiff "has not been under a disability . . . from March 18, 2010, through the date of [the ALJ's] decision." (*Id.*)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

///

4

## IV. DISCUSSION

Plaintiff contends that the ALJ: (1) erred in the credibility determination; (2) erred in the determination of Plaintiff's RFC because he "failed to consider that Dr. Puestow [on whose opinion the ALJ relied] did not provide an opinion regarding Plaintiff's ability to sit," and "the ALJ should have re-contacted Dr. Puestow for a complete response to this interrogatory;" and (3) erred in his Step Five finding by failing to provide a complete hypothetical to the VE. (Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 2-10) (Dkt. No. 25).) The Commissioner contends that: (1) the ALJ's credibility determination was proper; (2) substantial evidence supports the ALJ's RFC finding that Plaintiff could sit for up to eight hours per day, including Dr. Puestow's opinion that did not limit Plaintiff's sitting; and (3) substantial evidence supports the ALJ's Step Five finding. (Memorandum in Support of Defendant's Answer ("Def. Memo.") at 2-8) (Dkt. No. 26).)

### A. The ALJ Erred In Evaluating Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence in the record for rejecting his subjective symptoms and functional limitations. (Pl. Mem. at 2-8; Plaintiff's Reply to Memorandum in Support of Defendant's Answer ("Pl. Reply") at 1-3.) The Commissioner argues that the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective complaints, including "normal" objective findings, effective treatment, and daily activities inconsistent with his allegations. (Def. Memo. at 2-5.) For the reasons set forth below, the Court generally agrees with Plaintiff.

#### 1. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he is 34 years old and is a high school graduate. (AR 50.) He last worked in March 2010 for Northeast Valley Health Care Center as Patient Navigator. (AR 51.) Starting on March 18, 2010, he experienced extreme nausea, diarrhea, joint pain, and extreme fatigue that

prevented him "from being able to move along" or "drive from clinic to clinic." (AR 57-58.) He had to "vomit throughout the day," and his symptoms were "constant." (AR 58.) He could walk and sit for about 15 minutes, before changing positions. (AR 59.) He could not lift any weight without experiencing "an extreme amount of pain." (*Id.*) His symptoms have persisted since March 2010 and have gotten worse. (*Id.*) His wife has helped him wash and bathe since March 2010. (AR 60.) His wife cooks for him. (*Id.*) He sometimes bleeds from the nose and has blood in the stool. (AR 60-61.) He has difficulty breathing, and sometimes feels "like my chest is caving in and I can't breathe." (AR 61.) His medications do "some benefit," but cause him to get "extremely drowsy and mental fog." (*Id.*) He has "inflammation in all my body," which prevents him from moving around or bending down. (AR 62.) If he tries to write or "do anything with my hands," his hands cramp up and he has joint pain. (*Id.*) He would need 8-12 bathroom breaks in an eight-hour period. (AR 63.) He takes multiple rests throughout the day. (*Id.*) He feels he cannot do any work because of the daily pain that is "really excruciating." (AR 63-64.)

In an Exertion Questionnaire dated May 18, 2012, Plaintiff reported that he has constant chronic pain in his joints, muscles, nerves, and veins, even with medication; nausea; and "brain fog." (AR 193, 195.) He sits "throughout the day," and has to stand after a couple of hours of sitting. (AR 193.) He can walk about 15 to 20 feet, but he gets stiff and pain shoots through his legs, veins and body. (*Id.*) He can lift "simple things," such as a glass of water or clothes. (AR 194.) He can carry a five pound grocery bag for about 15 to 20 feet. (*Id.*) If he drives more than four miles, he "get[s] really fatigued and get[s] sore and stiff and get[s] pain." (*Id.*) His wife does the chores because doing chores causes "flare-ups" of his symptoms. (AR 195.)

///

///

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 30.) The ALJ relied on the following reasons: (1) lack of supporting objective evidence; (2) lack of treatment consistent with the alleged degree of impairment; and (3) activities of daily living. (*Id.*) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Lack of Supporting Objective Evidence

The ALJ discounted Plaintiff's credibility because of the "lack of objective medical evidence to substantiate his claims." (AR 30.) In discussing the objective

7

evidence, the ALJ noted that medical expert Dr. Puestow found Plaintiff's "subjective statements inconsistent with the objective findings, noting that it was very difficult to say Wegener's granulomatosis would produce these symptoms." (AR 28, 1358.) Plaintiff argues that the ALJ "grossly misstated and mischaracterized Dr. Puestow's responses." (Pl. Memo. at 4.) As Plaintiff acknowledges, Dr. Puestow opined, in response to a question whether Plaintiff's subjective statements were consistent with the objective medical treatment history: "Very difficult to say Wegener's may produce these symptoms, but severity cannot be supported by objective findings." (Pl. Memo. at 5; AR 1358.) Plaintiff fails to demonstrate a gross misstatement or mischaracterization. To the extent Plaintiff argues that the ALJ relied solely on Dr. Puestow's opinion in finding that the objective evidence did not support Plaintiff's claims, his argument fails. (Pl. Memo. at 5.)

The ALJ noted that Plaintiff was diagnosed with Wegener's granulomatosis and polyarthragias in February 2012, and his symptoms resolved when his Prednisone was increased. (AR 28, 316.) In March through November 2012, and in March 2013, Plaintiff reported no side effects from his medications and was doing well with improved symptoms. (AR 28, 383-91, 920.) Although Plaintiff complained of headaches in July and October 2012, an MRI of Plaintiff's brain in September 2012 was normal. (AR 28, 916.) In August 2013, after chemotherapy treatment for Wegener's granulomatosis, a chest x-ray and angiogram showed Plaintiff's left lower lobe was consolidated with mild interstitial prominence, his lungs were clear, his cardiac silhouette was within normal limits, his right upper and left lower lobe infiltrates were stable, and he had left lower lobe pneumonia. (AR 28, 1137-38, 1141, 1143.) An August 2013 ECG showed sinus tachycardia, but was otherwise normal. (AR 28, 1139.) Plaintiff does not dispute these findings. (Pl. Memo. at 2-6; Pl. Reply at 2.)

///

However, remand on this issue is warranted for consideration of evidence that Plaintiff tendered after the ALJ issued his decision. On August 4, 2014, Plaintiff submitted to the Appeals Council a Physical Residual Functional Capacity Questionnaire completed by treating physician Dr. Ramesh Kesavalu, dated June 27, 2014, assessing Plaintiff's RFC at less than sedentary as of 2011. (AR 1364-68.) The Appeals Council considered Dr. Kesavalu's opinion and made the evidence a part of the record. (AR 2, 6.) Because the Appeals Council considered the new evidence and made it part of the record, the Court must consider it. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citation omitted). If the new evidence creates a reasonable possibility that it would change the outcome of the ALJ's decision, then remand is appropriate to allow the ALJ to consider the evidence. *Mayes*, 276 F.3d at 462.

The new evidence shows that Dr. Kesavalu, whose specialty is rheumatology, started treating Plaintiff in 2011 and sees him every two months. (AR 1365, 1368.) Plaintiff is diagnosed with Wegener's Granulomatosis, and has symptoms of fatigue, pain, and bleeding. (AR 1365.) The clinical findings and objective signs include obesity, fatigue, muscle weakness, and joint tenderness. (*Id.*) Plaintiff has had a "fair response to chemotherapy medications," but has nausea. (*Id.*) Plaintiff's impairments have lasted at least 12 months. (*Id.*) Plaintiff can occasionally lift 10 pounds, and can never lift 20 pounds. (AR 1366.) He can stand and/or walk about two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday. (*Id.*) Due to muscle and joint pains, Plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking. (*Id.*) He would need a 10-minute break per hour. (*Id.*) He would be absent from

work more than three times a month. (*Id.*) He has decreased strength in the upper and lower extremities. (AR 1367.) He can occasionally bend and kneel, and can never climb, crouch, balance, or crawl. (*Id.*) He can frequently reach, and occasionally handle and finger. (*Id.*) He needs to avoid heavy machinery, heights, and slippery surfaces. (*Id.*) Dr. Kesavalu opined that the restrictions he assessed apply at least as early as 2011. (AR 1368.)

In discussing the lack of supporting objective evidence, the ALJ specifically found that the record lacked a medical opinion that supported Plaintiff's allegations. (AR 29.) The ALJ considered disability findings by Plaintiff's treating physicians, including Dr. Kesavalu, but rejected the findings because they were on an issue reserved to the Commissioner. (*Id.*) The ALJ further noted that the disability findings did not address the nature and severity of the impairments, whether the impairments met the durational requirements, and Plaintiff's RFC. (*Id.*) Dr. Kesavalu's June 2014 medical opinion addresses the areas identified by the ALJ and creates a reasonable possibility that it would change the outcome of the ALJ's decision. *See Mayes*, 276 F.3d at 462. Accordingly, remand is appropriate.

On remand, the ALJ shall review and consider Dr. Kesavalu's June 2014 opinion as part of the objective evidence, and reevaluate Plaintiff's credibility.

### b. Reason No. 2: Treatment Not Consistent with Alleged Degree of Impairment

The ALJ found that the "amount, frequency, and intensity of [Plaintiff's] treatment are not consistent with the alleged degree of impairment." (AR 30.) The ALJ noted that Plaintiff's treatment included Prednisone and chemotherapy, that the Prednisone helped, and that Plaintiff reported no side effects from his medications. (AR 28.) The record further indicates that Plaintiff was treated with Vicodin, Norco, Neurontin, Methotrexate, high dosages of Prednisone, and chemotherapy; he was under the care of numerous specialists; and he was admitted to the hospital on several occasions for treatment. (AR 322, 324, 327, 358, 383, 760, 916, 969, 994,

1233, 1309, 1328.) There is no evidence in the record that more frequent or aggressive treatment was available to treat Plaintiff's conditions, and the ALJ was not qualified to draw his own inference regarding whether such treatment was available. *See Tran v. Colvin*, 2016 WL 917891, at *6-7 (C.D. Cal. Mar. 8, 2016) (finding no support for ALJ's finding that surgery or more aggressive treatments were available options to treat claimant's conditions, and stating that an ALJ is not qualified to draw inferences regarding whether more aggressive treatment is available to treat a claimant's conditions) (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("[a] claimant cannot be discredited for failing to pursue non-conservative treatment options were none exist") (citations omitted); *Boitnott v. Colvin*, 2016 WL 362348, at *4 (S.D. Cal. Jan. 29, 2016) (an ALJ is not qualified to draw his own inference regarding whether more aggressive courses of treatments were available)).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Activities of Daily Living

The ALJ found that Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 30.) The ALJ noted that although Plaintiff alleged that he could not perform all basic household chores unassisted, run errands, go shopping alone, or cook meals independently, he could watch television, read, pick up his daughter from PreK and help her with her homework, and travel to Guatemala for two weeks in April 2011. (AR 30, 789.) The ALJ concluded that Plaintiff's daily activities "suggest that [Plaintiff] has better capacities than he has stated in the testimony and written statements," as he "is able to spend a substantial part of the day in activities involving the performance of functions readily transferable to competitive work." (AR 30.)

///

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The fact that Plaintiff carried on limited daily activities such as watching television, reading, and picking up his daughter from PreK and helping her with her homework, does not detract from his overall credibility. Despite the ALJ's finding that Plaintiff was able to spend a substantial part of the day performing functions readily transferable to competitive work, the record does not show that these activities consumed a substantial part of Plaintiff's day, nor did the ALJ provide support for his finding. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Further, the mere ability to perform some daily activities is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, even assuming that watching television and understanding PreK-level work is transferable to a competitive work environment, Plaintiff takes multiple rests per day and he relies on his wife to help with dressing, bathing, cooking, shopping, running errands, and doing chores. (AR 63, 789.) The ALJ acknowledged that Plaintiff needs help with basic chores, but appears to ignore the impact of the

limitations on Plaintiff's daily activities. (AR 14.)

To the extent the ALJ discounted Plaintiff's credibility based on a two-week trip to Guatemala in April 2011 (AR 30), the Court cannot find this reason clear and convincing. The ALJ did not provide findings as to how Plaintiff's trip to Guatemala undermines his credibility.[4] *See Santos v. Colvin,* 2015 WL 3886939, at *6 (C.D. Cal. June 24, 2015) ("Merely referencing Plaintiff's [Mexico] trips was insufficient to establish a conflict with Plaintiff's testimony.") (citations omitted); *Chalfant v. Astrue*, 2011 WL 61612, at *6 (C.D. Cal. Jan. 6, 2011) ("[P]laintiff's vacation to Hawaii does not inherently negate her allegations of pain and other symptoms, and the ALJ provided no explanation as to why she found plaintiff's ability to partake in such a vacation incompatible with plaintiff's complaints. Nor is it apparent from plaintiff's testimony about her trip that she spent a 'substantial part' of her time performing any physical task that translates to the work environment") (citation omitted).

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility. Furthermore, the ALJ must consider new evidence as part of the objective evidence in the record and reevaluate Plaintiff's credibility. Accordingly, remand is warranted on this issue.

### B. The Court Declines To Address Plaintiff's Other Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments that the ALJ erred in the RFC assessment[5] and

---

[4] According to the record, Plaintiff was admitted to the hospital following the trip due to bloody diarrhea that occurred while he was in Guatemala. (AR 358-66.)

[5] The Court notes that the ALJ could have reasonably concluded that in leaving blank the limitations for sitting, Dr. Puestow did not find any limitations in Plaintiff's ability to sit, and the ALJ's duty to recontact Dr. Puestow did not arise. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citations omitted). On remand, the ALJ is free to reconsider Dr. Puestow's opinion in reassessing Plaintiff's RFC.

failed to pose a complete hypothetical to the VE at Step Five.[6] *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. On remand, the ALJ shall (1) consider the new evidence consisting of Dr. Kesavalu's June 2014 opinion, and reassess Plaintiff's subjective allegations in light of the new

---

[6] The Court notes that Plaintiff was given the opportunity to object to the hypothetical to the VE prior to the ALJ's decision, but Plaintiff did not do so. (AR 23.)

evidence; and (2) reassess Plaintiff's RFC, if warranted, and proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 25, 2016

*/s/ Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**